### UNITED STATES *v.* BOWMAN.

Filed January 14, 1885.

1. ROBBERY OF UNITED STATES MAIL—SECTION 5472, REV. ST. U. S.

When in the trial of an indictment the evidence proves that the accused took by force, from the possession of the postmaster, a package directed to another person, which was a part of the United States mail, although such package was not in the post-office, and had been removed to some other place, and although the postmaster may have intended to appropriate the same for a private debt due to himself, the accused is guilty of robbing the mail, within the meaning of section 5472 of the Revised Statutes of the United States.

2. SAME—PUNISHMENT—PROVINCE OF COURT—UNITED STATES LAW—TERRITORIAL STATUTE.

Where a person is found guilty of robbing the mail, it is the province of the court, under the law of the United States, to assess his punishment. The statute of the territorial legislature has no application to this class of cases.

Appeal from the Second judicial district court.

*G. W. Prichard,* U. S. Atty., for appellees.

*Bernard Rodey,* for appellant.

AXTELL, C. J. The defendant was indicted, under section 5472 of the United States Revised Statutes, for robbing the mails. He was tried, convicted, and sentenced to seven years in the penitentiary. His counsel has made a very elaborate and painstaking defense for his client before this court, and has argued with force and ingenuity a number of points to sustain his allegation that there were sufficient errors committed at the trial to entitle him to a reversal. There were two assignments of error which especially interested this court: one was that evidence was excluded which tended to show that the articles taken from possession of the postmaster were not in the post-office nor in the possession of the United States at the time they were taken; the other, that the court ought to have permitted the jury to assess the punishment. These are the only points we shall consider.

The facts in this case are substantially that defendant came into the post-office and inquired for a package, and was informed that there was none for him; that he then inquired for a package for James Smith, and was informed that there was a package for said Smith. He was, at his request, shown this package, and saw by marks upon it where it was from. He then claimed this package, and endeavored to satisfy the postmaster that this package was intended for him; but the postmaster still refused to deliver it to him, saying that he knew James Smith, and could only deliver it to him, or to his order. Bowman then went away from the post-office, and in his absence the

postmaster opened the package, and found that it contained what he believed to be burglars' tools, and what he believed to be improper matter to be carried in the United States mails. He took the articles—a bulls'-eye lantern and a pair of nippers—from the package, and put the lamp upon a shelf in his store and the nippers in a drawer. Defendant soon after returned, made a demand for the goods, was again refused, when he suddenly forced the postmaster at the point of a pistol to give him the lamp and nippers, and he carried said articles away. For the information of the police, it may be well enough to state at this point that these articles were obtained from the firm of Montgomery, Ward & Co., of Chicago, Illinois.

Section 5472, under which this prosecution is had, reads as follows:

"Sec. 5472. Any person who shall rob any carrier, agent, or other person intrusted with the mail, of such mail, or any part thereof, shall be punishable by imprisonment at hard labor for not less than five years and not more than ten years; and, if convicted a second time of a like offense, or if, in effecting such robbery the first time, the robber shall wound the person having the custody of the mail, or put his life in jeopardy by the use of dangerous weapons, such offender shall be punishable by imprisonment at hard labor for the term of his natural life."

The court instructed the jury as to degree of punishment or grade of offense as follows:

"Your duties, gentlemen, will be, first, under certain previous instructions, to determine whether the prisoner is guilty or not guilty of any offense. If he is guilty of an offense, whether that offense is the simple offense of robbing a person of the mail, or of some part of it, or if he is guilty of robbing the person having charge of the mail, or of some portion of it, accompanied with putting his life in jeopardy by the use of dangerous weapons."

And the jury having found him guilty under the first clause only, he was afterwards sentenced by the court to seven years in the penitentiary. Why the jury did not find him guilty of the graver offense of putting the postmaster's life in jeopardy by the use of a dangerous weapon, can only be accounted for by the almost universal disposition of jurors to be merciful. On the trial the defendant produced as witnesses Charles Ross, William Land, and William Hight, and offered to prove by each of them that the witness for the prosecution, John B. Hall, postmaster at Cooliadge, on the day of the alleged robbery, and previous to the commission of the same, showed them the lamp and nippers in controversy, unwrapped and separated, as described, and declared to them and each of them that James Smith, the person to whom they were addressed, owed him a small account and had left without paying it, and that he intended to confiscate, or, in his own language, "freeze onto those goods" until the account was paid. The court excluded this evidence and defendant excepted. This is all the evidence offered to establish the proposition that these goods, at the time they were taken, were not in the possession of the postmaster. We cannot see that this offered evidence tends in the

remotest degree to prove that proposition. The section of the United States law under which this prosecution is had says nothing about a post-office,—nothing about mail-sacks,—but is directed against any person who shall rob any carrier, agent, or other person intrusted with the mail, of such mail, or any part thereof. Hall was post-master—he was intrusted with the mail. This package was a part thereof, and it was taken from him by this defendant by force, and putting him in bodily fear and danger of his life. It is not of the slightest importance where the postmaster had these goods, or what he intended to do with them. He might have had them in his store or upon the highway, and he might have intended thereafter to steal them; it does not matter—they were a part of the United States mail— they were intrusted to him by the United States. He was their lawful custodian, and they were robbed from him by this defendant. We are of opinion that this evidence was properly excluded, and that defendant could not possibly be injured by its exclusion, nor could he have been benefited by its admission.

The next point raised in favor of defendant is on the following instruction asked by defendant and refused by the court: "The court is asked to instruct the jury that, if they find the defendant guilty, they must assess the punishment in their verdict." The request so to instruct the jury is founded upon the following provision of our territorial statute: "All issues of fact in a criminal case shall be tried by a jury, who shall assess the punishment in their verdict, and the court shall render judgment accordingly." The provision of the statute that the jury must assess the punishment within the limits prescribed by the legislature is in derogation of the common law, and must be strictly limited to cases intended by the territorial legislature. It is true that a law of the United States is to be administered in the same manner as one enacted by the territorial assembly, but the punishment of an offense as fixed by the United States law, between certain limits, as in this case, at not less than five nor more than ten years, was, in contemplation of the law-makers. at the time the statute was enacted, to be in the discretion of the judge and not of the jury, for that had been and was the invariable custom of the courts. It is just as clear to our minds that this was the intention of the law-making power as if they had said, in the statute, "not more than ten nor less than five years, in the discretion of the court." We are of this opinion, for it had so been the custom of the courts for a period of time to which the memory of man ran not to the contrary, and it is not now to be tolerated that this shall be changed by a statute of our territorial legislature, which, it is to be presumed, had in contemplation only its own enactments. The peculiar province of juries is to find facts, and the assessing of punishments is not a fact. This is an act of legislation, a provision of law, and where a discretion is given it should be lodged in the court, which is more apt to be intelligent, impartial, and unbiased. We do not favor extending this provision of our territorial legislature to United States

laws,—laws passed many years before this territory had an existence, and which had been administered by courts that had uniformly exercised this delicate and important duty of discriminating in the punishment of criminals. We are of opinion that the judgment of the district court ought to be affirmed; and it is so ordered.

WILSON, J., concurs.